**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARIA ESPARZA,

        Plaintiff,

v.                                   No. CV-2011-00727 WPJ/WPL

DOUGLAS BOWMAN, in his individual capacity,

        Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS COMPLAINT ON QUALIFIED IMMUNITY
AND FOR SUMMARY JUDGMENT**

Plaintiff Maria Esparza (hereinafter "Mrs. Esparza"), by and through her counsel of record, MORRISSEY | LEWIS, LLC (Kari T. Morrissey and Jason J. Lewis) and Paige Duhamel Esq. submits her response to Defendant's Douglas Bowman's motion to dismiss Plaintiff's Complaint on the grounds of qualified immunity and on the basis of Fed. R. Civ. Pro. 56.

**INTRODUCTION**

This controversy began when Defendant Bowman responded to an anonymous call regarding a possible fight at 323 State Street in Texico, New Mexico. Dispatch provided no information regarding the fight, including a description of the individuals alleged to be fighting, to Defendant Bowman. Upon arriving at the scene, Defendant Bowman observed Mrs. Esparza walking toward her car and get into the car. Defendant Bowman made contact with Mrs. Esparza by ordering that she stop and submit to his questioning. Mrs. Esparza declined to respond to Defendant Bowman's attempts to detain her, and instead got into her car and drove away. Defendant Bowman continued his investigation at 323 State Street and concluded there was no fight underway, no evidence of any recently completed fight, and nothing to link Mrs. Esparza to a fight. Instead of simply closing his investigation, Defendant Bowman began a campaign of

1

unconstitutional conduct against Mrs. Esparza by obtaining a warrant for Mrs. Esparza's arrest, subjecting her to three years of criminal prosecution, and causing a chilling effect on Mrs. Esparza's First Amendment right to free speech.

Defendant Bowman's arrest and subsequent prosecution of Mrs. Esparza was unlawful at the time of her arrest and prosecution and in violation of Mrs. Esparza's clearly established constitutional rights.  In a sworn affidavit written contemporaneously with the incident, Defendant Bowman testifies that he sought only to speak to Mrs. Esparza, and made no mention that he thought she had committed any crime – a fact too important to be left out had it been true.  Indeed, there was no basis for him to reasonably suspect she had committed a crime when he made contact with her because he knew scant detail of the alleged incident – the alleged location was essentially all he knew.  Defendant Bowman's post hoc justification many months or years later asserting that Mrs. Esparza could have been a suspect because she was walking to her car as he was arriving on scene is insufficient and inconsistent with his previous sworn testimony in the affidavit for arrest warrant and a material issue of fact properly decided by a jury. Consequently, Defendant had no reasonable suspicion to detain Mrs. Esparza, no probable cause to arrest Mrs. Esparza, and no justification to call for her continued prosecution for any alleged violation of NMSA § 30-22-1. Lastly, there is evidence that Defendant Bowman's arrest of Mrs. Esparza was unlawfully motivated by her voicing of prior complaints against Defendant Bowman to the mayor and city council.  Defendant Bowman caused a chilling effect on Mrs. Esparza's ability voice further concerns about her interactions with the Texico City Police Department. As a result, there are sufficient and genuine issues of material facts to prohibit the dismissal of Plaintiff's complaint.

## RESPONSE TO STATEMENT OF UNDISPUTED FACTS

1.      Fact 1 is undisputed.

2.     Fact 2 is disputed as incomplete. Defendant fails to note that the call was anonymous.

3.     Fact 3 is disputed. Bowman testified that he observed that there were approximately four people on the scene, aside from Mrs. Esparza when he arrived. Furthermore, video-taped footage of the August 16, 2008 incident does not show Mrs. Esparza walking quickly to her car upon Bowman's arrival, but that she was walking at a normal pace and was already on her way to her vehicle as Bowman stopped along side the road next to her family's home.

4.     Fact 4 is undisputed.

5.     Fact 5 is disputed insofar as it implies that Mrs. Esparza understood that Officer Bowman was yelling at her before she entered her vehicle. Mrs. Esparza has testified that she did not understand Officer Bowman was approaching her until she was in her vehicle. (Exhibit A, *Deposition of Maria Esparza*, p. 75, lines 3-5, p. 77, lines 6-18).

6.     Fact 6 is disputed in so far as it implies that Mrs. Esparza heard or understood Bowman's instructions as prohibiting her from leaving. Mrs. Esparza testified that she heard Bowman's request to talk to her, and that he yelled at her to respect him, but that she did not hear him say that she couldn't leave. (Exhibit A, *Deposition of Maria Esparza*, p. 78, lines 4-20).

7.     Fact 7 is disputed as incomplete. Bowman opened Mrs. Esparza's driver's side door and stated that he would like to speak with her, but again, did not state the reason why he was there and did not ask her to stop. (Exhibit A, *Deposition of Maria Esparza*, p. 79, lines 19-22).

8.     Fact 8 is disputed as incomplete. Mrs. Esparza stated that the reason why she shut the car door after Bowman opened it was because she was scared of the officer. (Exhibit A, *Deposition of Maria Esparza*, p. 80, lines 4-5).

9.      Facts 9 and 10 as stated by Defendant are purposefully misleading. Mrs. Esparza stated that she understood what Mr. Bowman was saying, but she testified that she didn't understand why he was yelling at her or what his instructions to her were. Mrs. Esparza also indicated that she heard Bowman's threats to arrest her and that she was afraid of the officer. (Exhibit A, *Deposition of Maria Esparza*, p. 77, lines 6-18, p. 78, lines 4-7, p. 80, lines 4-5, p. 83, lines 3-8).

10.     Fact 10 is disputed. Mrs. Esparza testified that Defendant had already begun walking away when she drove off. Furthermore, Defendant never made any statements to the effect that Mrs. Esparza almost ran over his foot on the videotaped footage of the incident. (Exhibit A, *Deposition of Maria Esparza*, p. 79, lines 10-18).

11.     Fact 12 is undisputed.

12.     Fact 13 is disputed as incomplete. Mrs. Esparza testified that she called police dispatch because there was a policeman from Texico at her home and that he wanted to talk to her but that she couldn't understand what he wanted and that she need to speak to someone who could help her. (Exhibit A, *Deposition of Maria Esparza*, p. 83, lines 3-8).

13.     Fact 14 is disputed as incomplete and unverifiable. Mrs. Esparza testified that she told Officer Salguero that she left because Bowman was "yelling and yelling" at her and that she called the police because she did not understand what was happening. Officer Salguero responded by stating that she could not do anything and that Mrs. Esparza had to just let Bowman yell at her. Furthermore, Defendant never provided this written statement by Officer Salguero during her criminal prosecution and that its provenance has not been verified. (Exhibit A, *Deposition of Maria Esparza*, p. 86, lines 9-13).

14.     Fact 14 is disputed. In the August 19, 2008 statement, Mrs. Esparza states that she did not understand that Bowman was ordering her to stop, that he was scaring her by grabbing for her arm, that she didn't understand why Bowman was yelling at her, and that Officer Bowman's yelling had scared her mentally ill daughter. Mrs. Esparza does not say that she did not want to speak to Bowman because she did not like him. Exhibit B, *August 19, 2008 Statement*.

15.     Facts 16, 17, 18, 19, 20, 21, and 22 are undisputed.

16.     Fact 23 is disputed. Mrs. Esparza testified that she called Texico City Hall on August 16, 2008 to be placed on the City Council meeting agenda, but did not attend any further City Council meetings because of the criminal charges against her. (Exhibit A, *Deposition of Maria Esparza*, p. 53, lines 2-25).

## SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS

17.     At the time of the alleged incident, Mrs. Esparza was a 72 year-old grandmother. (Exhibit A, *Deposition of Maria Esparza*, p. 6, lines 20-21).

18.     Mrs. Esparza first met Bowman prior to the incident alleged in the complaint when she called Texico City Hall for assistance when she saw children in golf carts throwing firecrackers at her dogs. (Exhibit A, *Deposition of Maria Esparza*, p. 43, lines 16-24).

19.     Instead of investigating Mrs. Esparza's complaint, Bowman began yelling at Mrs. Esparza and threatening to take her to court because her dogs were running loose. (Exhibit A, *Deposition of Maria Esparza*, p. 43, line 25, p. 44, lines 1-4 and 8-11).

20.     Mrs. Esparza decided to complain to Texico City Hall about Defendant Bowman because he refused to investigate her complaint about children throwing firecrackers at her dogs and because he yelled at her. (Exhibit A, *Deposition of Maria Esparza*, p. 57, lines 11-25, and p. 58, lines 1-10.)

21.     At a meeting on July 22, 2008, the Texico City Council did not take any actions against Bowman on the basis of Mrs. Esparza's complaints. (Exhibit C, *Deposition of Douglas Bowman*, p. 43, lines 8-14).

22.     After she filed her initial complaint with City Hall, Mrs. Esparza saw a Texico police officer drive by her home in an old patrol unit and point out her home to another police officer. (Exhibit A, *Deposition of Maria Esparza*, p. 58, lines 11-25, and p. 59, lines 1-16.)

23.     Mrs. Esparza complained about this incident to the Texico City mayor prior to the August 16, 2008 incident. The mayor stated that he would speak to the Texico City police about her complaint. (Exhibit A, *Deposition of Maria Esparza*, p. 58, lines 11-18.)

24.     Defendant Bowman confirmed that the mayor relayed information to him about Mrs. Esparza's complaints regarding the firecracker incident. (Exhibit C, *Deposition of Douglas Bowman*, p. 71, lines 5-9).

25.     On August 16, 2008, Mrs. Esparza testified that she arrived at 323 State Street in Texico, the site of the incident that lead to Mrs. Esparza's arrest, to pick up her husband so that they could go to the store to buy a pipe. (Exhibit A, *Deposition of Maria Esparza*, p. 61, lines 6-9.)

26.     Mrs. Esparza testified that she had only been at 323 State Street for approximately 15 to 20 minutes before Bowman arrived, and that she did not see anyone yelling or fighting while she was at this address. (Exhibit A, *Deposition of Maria Esparza*, p. 64, lines 11-24.)

27.     Mrs. Esparza's youngest daughter, Juanita, was sitting in the backseat of Mrs. Esparza's car when the incident with Bowman on August 16, 2008 occurred. (Exhibit A, *Deposition of Maria Esparza*, p. 61, lines 15-17.)

28.     Bowman testified that the call dispatching him to 323 State Street did not include any identifying information about the alleged suspects. (Exhibit C, *Deposition of Douglas Bowman*, p. 78, lines 11-13).

29.     When Bowman arrived on scene, he did not see anyone engaged in any physical confrontation. (Exhibit C, *Deposition of Douglas Bowman*, p. 86, lines 5-8).

30.     Likewise, Bowman testified that he did not notice anyone yelling or talking when he arrived on scene other than Mrs. Esparza. (Exhibit C, *Deposition of Douglas Bowman*, p. 86, lines 24-25, p. 87, lines 1-3).

31.     Juanita has cerebral palsy, and Mrs. Esparza has testified that Bowman's yelling and knocking on the car door during the August 16, 2008 incident scared Juanita. (Exhibit A, *Deposition of Maria Esparza*, p. 7, lines 16-23.)

32.     Bowman made no arrests at 323 State Street because he could find no evidence that any battery or other crimes had been committed. (Exhibit C, *Deposition of Douglas Bowman*, p. 100, lines 23-25, p. 101, lines 1-4).

33.     Officer Gilbert Salguero was dispatched to Mrs. Esparza's home at 414 State Street in Texico mere minutes after she left 323 State Street. (*See* Exhibit D, August 16, 2008 *Dispatch Report*).

34.     Bowman has stated that he spoke to Officer Salguero shortly after Salguero finished speaking with Mrs. Esparza at her home. (Exhibit C, *Deposition of Douglas Bowman*, p. 101, lines 20-25).

35.     Mrs. Esparza testified that she called someone in the mayor's office about making another complaint against Defendant Bowman and possibly being placed on the City Council Agenda for the August city council meeting. She stated that she felt that she later could not go to

any city council meetings to complain about the incident because of the pending criminal charges. (Exhibit A, *Deposition of Maria Esparza*, p. 53, lines 2-25.)

36.    Bowman has been in law enforcement, with only brief gaps in service, since approximately 1997. (Exhibit C, *Deposition of Douglas Bowman*, p. 28, lines 3-9).

37.    The two magistrates who oversee warrant applications for the Texico City Police Department, Judge Rick Hollis and Duane Castleberry, are non-attorney magistrate judges. (Exhibit C, *Deposition of Douglas Bowman*, p. 26, lines 1-15).

38.    Bowman has testified that neither he nor any of his subordinate officers, either in his time with the Texico City Police Department or with the Clovis Police Department have ever had a magistrate judge reject their application for a warrant. (Exhibit C, *Deposition of Douglas Bowman*, p. 26, lines 18-23).

39.    Likewise, Bowman has testified that only once during his law enforcement career has a district attorney requested that he include more information on his affidavit for a warrant. At no other time has a district attorney withheld approval of his request for a warrant. (Exhibit C, *Deposition of Douglas Bowman*, p. 23, lines 19-25, p. 24, lines 1-4).

40.    Bowman also testified that none of his subordinates have had any problems getting their warrant requests approved by the local district attorneys. (Exhibit C, *Deposition of Douglas Bowman*, p. 24, lines 7-9).

41.    On his affidavit for arrest warrant, Bowman solely states that Mrs. Esparza could have been a witness to the incident alleged in the anonymous 911 call. (Exhibit E, *Affidavit for Arrest Warrant*).

**ARGUMENT**

    **A.    Summary Judgment Standard**

Summary judgment is only appropriate when there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). When applying this standard, the court views the evidence and draws reasonable inferences in the light most favorable to the nonmoving party. *Sanders v. Sw. Bell Tel., L.P.,* 544 F.3d 1101, 1105 (10th Cir. 2008).

    **B.    Defendant Fails to Show that Plaintiff Has Alleged No Genuine Issue of Material Fact or Qualified Immunity in Support of Her Wrongful Arrest Claim**

        *1.    Defendant Did Not Have Reasonable Suspicion to Detain Plaintiff and Order Her Arrest Pursuant to NMSA 1978, § 30-22-1.*

Both state and federal law prohibit Defendant Bowman's conduct in arresting Mrs. Esparza for obstructing or evading a police officer pursuant to NMSA 1978, § 30-22-1 and this law was clearly established at the time of Defendant Bowman's conduct. The Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968) ruled that "no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Id*. at 9. More specifically, in *Florida v. Royer*, the Court cited *Terry v. Ohio* in stating that when a police officer approaches a person without justification, "the person approached…need not answer any questions put to him; indeed, he may decline to listen to the questions at all and may go on his way." *Florida*, 460 U.S. 491, 498.

An investigative detention is a Fourth Amendment seizure of limited scope and duration and requiring reasonable suspicion of criminal activity. *Romero v. Story*, 672 F.3d 880, 886 (10th Cir. 2012); *Lundstrom v. Romero,* 616 F.3d 1108, 1120 (10th Cir.2010).  A Fourth Amendment seizure occurs where, considering all the circumstances, a reasonable person would not feel free to

leave or disregard the contact. *Lundstrom*, 616 F.3d at 1119 (10th Cir. 2010); *See Petersen v. Farnsworth*, 371 F.3d 1219, 1221–22 (10th Cir. 2004). An officer who "stops" and briefly detains a person for questioning "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Romero*, 672 F.3d at 886 (10th Cir. 2012); *United States v. Davis,* 94 F.3d 1465, 1468 (10th Cir.1996) (citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Reasonable suspicion does not rise to the level of probable cause, but "it does demand something more than an inchoate and unparticularized suspicion or hunch." *Id.* (internal quotations omitted).

While the court views the totality of the circumstances to determine whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing, an officer's detention of an individual must be justified at its inception. *Lundstrom*, 616 F.3d at 1120 (10th Cir. 2010); *citing United States v. Cervine,* 347 F.3d 865, 868 (10th Cir. 2003); *Cortez v. McCauley,* 478 F.3d 1108, 1123 (10th Cir. 2007) (emphasis added). Likewise, a police officer cannot legally detain an individual simply due to an allegation that criminal activity is afoot. *United States v. Fisher*, 597 F.3d 1156, 1158-59 (10th Cir. 2010); *United States v. Goodrich,* 450 F.3d 552, 560 (3d Cir. 2006). There must be some reasonable belief that the particular individual detained committed an alleged crime. *Fisher*, 597 F.3d at 1158-59; *Goodrich,* 450 F.3d at 560.

Several cases give guidance to this Court in determining whether Defendant Bowman had reasonable suspicion to detain Mrs. Esparza. In *U.S. v. Davis*, the Tenth Circuit held that officers did not have sufficiently reasonable suspicion to detain an individual who had a known criminal history and gang association, who had arrived in a vehicle outside of a "juice joint" or address known for criminal activity, and who made eye contact with the officers before breaking it and walking away, and who did not stop and take his hands out of his pockets and speak to officers

when ordered to do so. *Id.*, 94 F.3d 1465, 1467 (10th Cir. 1996). The Tenth Circuit rejected the officers' argument that Mr. Davis's known criminal history and his arrival at high crime address gave them reasonable suspicion to detain Mr. Davis. *Id.* at 1468. Likewise and importantly, the Court rejected the officers' argument that Mr. Davis's decision to walk away from them and refuse to stop when ordered was adequate reasoning to believe Mr. Davis could be involved in criminal activity. *Id.* at 1468-1469. In making this finding, the Tenth Circuit reinforced the Supreme Court's holding in *Florida v. Royer*, 460 U.S. 491, 497-98, stating that while an officer does not violate the Fourth Amendment simply by approaching an individual in a public place and asking him questions, the individual "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." *Id.* quoting *Royer*. The court found that Mr. Davis's detention could not be justified by his refusal to stop because a person may not be detained, even momentarily, without reasonable or objective grounds for doing so, and that a person's refusal to listen or answer does not, without more, furnish those grounds. *Id.*

These cases strike a remarkable resemblance to the circumstances of Mrs. Esparza's encounter with Defendant Bowman.  As in the *Davis* case, Mrs. Esparza refused to subject herself to Defendant Bowman's questioning by leaving the scene, thereby exercising her constitutional rights to be free from unwanted seizure.  As did the officers in *Davis*, Defendant Bowman later attempted to cast Mrs. Esparza's lawful conduct of refusing to stop for his questioning into a criminal act.  The Tenth Circuit summarily dismissed those officer's justifications by ruling the officers exceeded the plaintiff's constitutional boundaries. Given that this case existed at the time of Mrs. Esparza's arrest, Mrs. Esparza respectfully urges this Court to similarly find Defendant Bowman's conduct unlawful and deny his motion for summary judgment and for qualified immunity.

Furthermore, while decided by the Tenth Circuit after Mrs. Esparza's arrest, the analysis adopted by the court in *Romero v. Story,* 672 F.3d 880 (10th Cir. 2010) is helpful. In *Romero*, the court distinguished between the facts in *U.S. v. Davis* and *U.S. v. Sanchez*, 519 F.3d 1208, 1215 (10th Cir. 2008), to which Defendant cites, by stating that a lack of a positive, direct information that a particular assailant committed a crime, unclear evidence about the departure of vehicles leaving an alleged crime scene, and no other corroboration of an anonymous tip about alleged criminal activity counseled against a finding of reasonable suspicion sufficient to warrant the detention of an individual. *Romero*, 672 F.3d at 887. In *Romero*, the court concluded, relying on *U.S. v. Davis*, that Mr. Romero's presence in an area where a 911 call alleged criminal activity took place was insufficient to provide reasonable suspicion for law enforcement officers to detain Mr. Romero. *Id*. at 888.

The New Mexico Supreme Court has also ruled on the issue of whether an individual may decline to be questioned by a police officer where the police officer lacks reasonable suspicion to detain them as a suspect. In *State v. Gutierrez*, 142 N.M. 1, (N.M. 2007), the New Mexico Supreme Court held that "a person being detained may decline to answer questions and is under no obligations to respond." *Citing Kolender v. Lawson*, 461 U.S. 352 (1983); *Terry v. Ohio*, 392 U.S. 1 (1968). New Mexico's Supreme Court, likewise, went on to hold that "a person has the constitutional right to walk away from an officer who lacks reasonable suspicion and simply wants to question the person." *Id*.

The New Mexico Court of Appeals construed what constituted a lawful order or "lawful discharge of his duties," for the purposes of an arrest under NMSA 1978, § 30-22-1. In *State v. Frazier*, 88 N.M. 103, 105, 537 P.2d 711, 713 (Ct. App. 1975), two police officers intervened in a non-violent civil dispute between a motel manager and a motel guest. *Id*. When the guest ran from

the motel, one of the officers chased and stopped the guest, demanding that the guest return to the motel with him. *Id*. The guest refused to accompany the officer, and when the officer stopped the guest the second time, the guest struck the officer. A second officer arrived and the two officers restrained the defendant and placed her under arrest for resisting a peace officer. *Id*. The court concluded that the first officer "did not have any general or specific grounds of suspicion that a criminal offense had been committed [by the defendant]" and therefore the officer had "exceeded his authority" when he detained the guest. *Id*. Likewise, the Tenth Circuit has analyzed NMSA 1978, § 30-22-1 and concluded that an officer must have probable cause or reasonable suspicion of a crime *prior to* the flight in order to arrest a person for flight or evasion. *Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012), citing *Gutierrez*, 162 P.3d at 166.  Similarly, the Tenth Circuit has found that a hunch that an individual may be able to provide information related to a criminal investigation is insufficient to support an arrest for violation of NMSA 1978, § 30-22-1 when the individual declines to speak further with officers. *Manzanares v. Higdon*, 575 F.3d 1135, 1144 (10th Cir. 2009).

Defendant Bowman cannot lawfully support his contention that he believed he had reasonable suspicion to detain and later arrest Mrs. Esparza. Defendant Bowman responded to an anonymous 911 call regarding a yelling and *possible* fighting by six people. The call did not describe the people involved in any alleged fighting. Bowman has testified that when he arrived on scene, he saw no physical altercation, nor was anyone yelling at each other, although he stated that he could hear Mrs. Esparza say something as she was walking to her vehicle. Consequently, any suspicion that he had that Mrs. Esparza, in particular, could have been involved in a public disturbance or fighting can only be said to rise to the level of a hunch, which the courts have clearly established is insufficient to form reasonable suspicion for an investigative detention.

Defendant Bowman cannot maintain in law or fact that he had reasonable suspicion that Mrs. Esparza had committed a crime from the first instance he sought to detain her. Videotaped footage of the incident shows that Mrs. Esparza was walking calmly to her vehicle as Bowman was arriving at 323 State Street, and Mrs. Esparza has testified that her daughter was already in the car because they were going to the store. There is no indication that Mrs. Esparza was attempting to flee the scene as Bowman pulled up next to her family's home. Analyzed under the rubric of *U.S. v. Davis*, an officer cannot articulate reasonable suspicion to detain an individual who simply stands accused of walking away from him, even when ordered to stop. Likewise, *U.S. v. Davis* counsels that Bowman could not have formed sufficient reasonable suspicion to detain Mrs. Esparza simply because she was at the location of *possible* criminal activity, and there was no particular indication that she, herself, was engaged in criminal conduct. Furthermore, Bowman admitted in his affidavit for arrest warrant that he initially sought to speak to her only as a witness; his justification for the basis of his reasonable suspicion that this 70-plus year-old woman could have been engaged in fighting was only conjured up after the fact during the course of litigation. Even if Defendant Bowman sincerely suspected Mrs. Esparza of criminal activity at the time of their encounter, his articulated reasons fail under *Davis*.  Defendant Bowman simply lacked the requisite factual basis to form a reasonable suspicion that Mrs. Esparza was committing any crime. As a result of any lack of reasonable suspicion by Bowman, it was well within Mrs. Esparza's Fourth Amendment right to refuse to speak to Bowman and to leave the scene.

If Mrs. Esparza was not free to leave the scene, and her leaving was a violation of NMSA 1978, § 30-22-1, then Bowman was required to have had reasonable suspicion that she had committed or was in the commission of a crime to detain her. Again, New Mexico Courts and the Tenth Circuit have long interpreted NMSA 1978, § 30-22-1 to require that an officer suspect an

individual had committed a crime *prior* to making an arrest for resisting or evading an officer. Because Defendant had no initial reasonable suspicion to believe Mrs. Esparza committed any crime, Defendant attempts to confuse the issue by making hay of Mrs. Esparza's ability to understand his request that she stop and speak with him. As Mrs. Esparza has stated, while she understood that Bowman wanted to speak with her, she could not comprehend why he wanted to speak with her because she had not engaged in any wrongdoing nor was there any wrongdoing afoot at the house. From Mrs. Esparza's perspective, Bowman arrived on scene out of the blue, yelling at her, threatening to arrest her, and scaring her and her daughter without any explanation. Furthermore, it is undisputed that Mrs. Esparza called and spoke to the police mere moments after leaving the scene. Under *State v. Frazier*, these facts, as alleged, do not support Mrs. Esparza's arrest for evasion of a police officer violation of NMSA 1978, § 30-22-1, let alone an arrest two days after it became clear that no underlying criminal activity had occurred. Additionally, Bowman did not articulate any community care-taking desire to protect Mrs. Esparza from harm by seeking to detain her; he has repeatedly stated that his reasons for requesting that she speak to him were investigatory. Consequently, Defendant Bowman's motion for summary judgment should be denied as a matter of law.

2.      *Defendant Is Not Entitled to Qualified Immunity*

A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that his actions violate that right. *Swanson v. Town of Mountain View,* 577 F.3d 1196, 1200 (10th Cir. 2009). A plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it, however, a plaintiff does not have to present a case with an identical factual situation, the plaintiff must show legal authority making it "apparent that in the

light of pre-existing law a reasonable official would have known that the conduct in question violated the constitutional right at issue." *Id.* (internal quotation marks and ellipsis omitted). In determining whether a right was clearly established, courts look for Supreme Court or Tenth Circuit precedent on point or clearly established weight of authority from other courts finding the law to be as the plaintiff maintains. *See id.*

The fact that a magistrate has authorized a warrant for a search or seizure does not render a police officer's conduct in an alleged violation of an individual's Fourth Amendment rights objectively reasonable. *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245, 182 L. Ed. 2d 47 (2012). Any argument that *Messerschmidt* has done away with the exception allowing suits to move forward where it is obvious that no reasonably competent officer would have concluded that a warrant should issue is false. *Id.* *Messerschmidt* reiterated the rule that the shield of authority conferred by the warrant will be lost if the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id.* Furthermore, cases decided since *Messerschmidt* have found that officers were not entitled to qualified immunity where affidavits for arrest warrants lacked probable cause. *See Merch. v. Bauer*, 677 F.3d 656, 665 (4th Cir. 2012).

The Tenth Circuit has also required that officers seeking warrants must have an objectively reasonable belief of probable cause to conduct a search or seizure to justify the warrant. *See Poolaw v. Marcantel*, 565 F.3d 721, 734 (10th Cir. 2009). In *Poolaw v. Mercantel*, the Court restated the importance of independent accountability for law enforcement officers based on the Supreme Court's findings in *Malley v. Briggs*, 475 U.S. 335, that

> It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We

find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.

*Poolaw*, 565 F.3d at 734; *Malley*, 475 U.S. at 345-346. Consequently, the Tenth Circuit held that it is not conclusive that a law trained judge found the affidavit sufficient to establish probable cause and issued the warrant, as the issuance of the warrant simply does not control the outcome of the court's inquiry into the officers' exercise of their own professional judgment. *Poolaw v. Marcantel*, 565 F.3d at 735. Other circuits have similarly held that it is objectively unreasonable for an officer to rely on an arrest warrant where the officer has alleged no probable cause to believe that an individual committed all of the elements of a suspected crime. *Merchant*, 677 F.3d 662-663.

In *Poolaw*, the Court took to task law enforcement officers who did not allege sufficient probable cause in an affidavit for a warrant to search the home of individuals related to a murder suspect. *Poolaw*, 565 F.3d at 735-765. Even though the officers made allegations that a suspected murderer occasionally resided in plaintiffs' home and that the suspect's wife had stayed with the plaintiffs during the time he was on the run, the Court found that these facts were insufficient to allege probable cause to conduct the search. *Id.* at 730-731. Importantly, the Court reviewed whether the officers' affidavit for the search warrant alleged facts linking evidence to the plaintiffs' home or whether the affidavit simply drew conclusions that evidence might exist based on speculation regarding the suspect's alleged conduct. *Id.*

While courts have typically granted deference to a magistrate's determination of probable cause, this deference is not boundless. *United States v. Leon*, 468 U.S. 897, 914, (1984). A magistrate issuing warrants must perform his duties in a neutral and dethatched manner and must not merely serve as a rubber stamp for the police. *Id.* To that end, the courts have required that

magistrates demand to see sufficient evidence presented in a warrant to determine probable cause and not merely ratify the bare conclusions of others. *Id*. at 915.

Courts have been additionally suspicious of the reasonable belief of officers in the reliability of a warrant where there is evidence that an officer has omitted potentially relevant or exculpatory information from a warrant affidavit. See *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991). While *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), adopted an objective standard for analyzing whether an officer acted lawfully for the purposes of determining qualified immunity, a court may make a subjective inquiry of an officer's intent if a plaintiff's claim alleges that the officer's motive or purpose was improper. *Bruning*, 949 F.2d at 356. As a result, the Tenth Circuit has found that an officer cannot be granted qualified immunity for obtaining a warrant and that a clear violation of an individual's Fourth Amendment rights is established where an officer "knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause." *Id*. at 357.

The law regarding reasonable suspicion and arrests for evasion of police officers pursuant to NMSA 1978, § 30-22-1 has long been established and required that Bowman articulate a reasonable belief that Mrs. Esparza had committed a crime *prior* to allegedly resisting or evading a police officer. The warrant for Mrs. Esparza's arrest states no such facts, and, additionally, only maintains that Mrs. Esparza could have been a witness to the alleged disturbance. As a result and in accordance with the facts of and courts' analyses of reasonable suspicion and probable cause for arrest in *U.S. v. Davis*, *State v. Frazier, Romero v. Story,* and *Manzanares v. Higdon*, Defendant Bowman's affidavit for the warrant for Mrs. Esparza's arrest was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245, 182 L. Ed. 2d 47 (2012). Consequently, neither Bowman nor

any reasonable officer could have believed that there was probable cause to arrest Mrs. Esparza for resisting or evading a police officer pursuant to NMSA 1978, § 30-22-1; there was no evidence that Mrs. Esparza committed any underlying crime and she was only alleged to have been a potential witness to a public disturbance. Additionally, even though Bowman has later stated that Mrs. Esparza could have been a suspect and that he had intended to include information as to this belief in the warrant, this fact does not cure the deficiencies in the warrant presented to the magistrate judge. *See Whiteley v. Warden, Wyo. State Penitentiary,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate.... A contrary rule would, of course, render the [legal process] requirements of the Fourth Amendment meaningless.").

Through Bowman's testimony that neither he nor any of his subordinate officers during his approximately ten-year law enforcement career had ever had a warrant application rejected by a magistrate judge is substantial evidence that the non-attorney magistrates serving Curry County have lost any neutral and detached perspective in issuing warrants; there appears to be a pattern and practice of magistrate rubber-stamping police officers' requests to search and arrest the County's citizenry. Likewise, district attorney approval of applications for warrants is rendered meaningless where there is evidence, as there is here, that district attorneys practice across the board approval of any warrant application sent their way. While there is an assumption that an officer's actions taken after obtaining a warrant are objectively reasonable where the officer has obtained prior DA and magistrate approval, this cannot be the case where there is such staggering proof that approval for warrants is so freely granted without more searching review of probable cause to do so. Consequently, the warrant approval practices of Curry County strip Bowman of

any defense that he's absolved of liability on his good faith engagement in the warrant approval process.

Notably, Bowman's affidavit for Mrs. Esparza's arrest omits any mention that she immediately called the police and spoke to another law enforcement officer after leaving the scene on August 16, 2008. As a result, the bare facts pled in the warrant were insufficient to place the magistrate on notice that Mrs. Esparza left the scene, not out of any desire to flee from her own criminal wrongdoing, but because she was confused by Bowman's approach and afraid of the officer. Officer Bowman spoke to Officer Salguero shortly after he spoke with Mrs. Esparza, and he was certainly aware of the reasons for her leaving the scene and immediate request for police assistance at the time of his application for the warrant. Likewise the warrant failed to mention that Bowman did not uncover any evidence of a public disturbance or fight and made no arrest on these charges at the scene or anytime afterward. The omission of these potentially exculpatory facts, further eviscerates any argument that Bowman reasonably relied upon the magistrate's determination of probable cause to approve the warrant for Mrs. Esparza's arrest.

Given the history of discord between Mrs. Esparza and Defendant Bowman, as well as the evidence contained on the videotaped footage of the incident that shows Bowman gloating to Mrs. Esparza's family members that he was going to obtain a warrant to arrest Mrs. Esparza, there is strong evidence to conclude that Bowman sought a warrant to arrest Mrs. Esparza for improper purposes, without any probable cause to do so. Pursuant to *Bruning v. Pixler*, the court should be counseled against finding that Bowman acted reasonably in securing and relying upon a warrant where there is evidence that he sought and obtained such an authorization to arrest Mrs. Esparza for retaliatory purposes.

Mrs. Esparza's constitutional rights to be free from unreasonable seizure were clearly established at the time of the incident. Defendant Bowman was clearly on judicial notice that Mrs. Esparza's simple action of walking to her vehicle upon his arrival at the scene did not constitute reasonable suspicion that she had committed a crime sufficient to detain her. Without reasonable suspicion that Mrs. Esparza had committed a criminal act prior to leaving the scene, he could not arrest her for evading a police officer pursuant to NMSA 1978, § 30-22-1. The facts, as stated in Bowman's affidavit for arrest warrant, contained no indicia of probable cause to believe Mrs. Esparza was in violation of NMSA 1978, § 30-22-1, and, as a result, no reasonable officer could have objectively believed that the warrant was valid if exercising his independent and experienced knowledge of the law as a law enforcement officer. Furthermore, the additional evidence that Bowman omitted potentially exculpatory information from his application for a warrant along with signs of a retaliatory motive for the arrest argue against granting Bowman qualified immunity and summary judgment based on any allegedly reasonable mistake in obtaining a warrant to arrest the Mrs. Esparza. Consequently, Mrs. Esparza has alleged sufficient and genuine material facts to prevent summary judgment and prohibit a ruling of qualified immunity for Bowman for Mrs. Esparza's arrest. Just as the court denied the defendant's qualified immunity claims for the arrest of an alleged witness in *Manzanares v. Higdon*, so should the court make the same determination here.

### C.    Plaintiff Has Dismissed Her Malicious Prosecution Claim

Mrs. Esparza intends to dismiss her malicious prosecution claim upon receiving concurrence from opposing counsel, and therefore provides no response on that issue.

### D.    Defendant Fails to Meet the Burden of Showing that Plaintiff Has Alleged No Genuine Issue of Material Fact or Qualified Immunity in Support of Her First Amendment Claim

As Defendant correctly states, to sustain a charge of First Amendment retaliation for her August 18, 2008 arrest, Mrs. Esparza must show (i) that she was engaged in constitutionally protected activity, (ii) that Defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) that defendant's action was substantially motivated as a response to plaintiff's exercise of her First Amendment free speech rights. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007), citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Mrs. Esparza states that she has met these elements of her claim and she has proved that Defendant lacked any probable cause to effectuate her arrest. *See Becker, supra*, 494 F.3d at 925.

The Tenth Circuit has found that direct evidence of First Amendment retaliation by governmental officers is rarely available and frequently must be inferred by the facts alleged. *Meyer v. Bd. of County Com'rs of Harper County, Okla.*, 482 F.3d 1232, 1244 (10th Cir. 2007). The courts, therefore, must consider reasonable inferences available from the evidence. *Id*. Furthermore, the Tenth Circuit has held that "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

Mrs. Esparza was engaged in constitutionally protected activity in voicing complaints against Bowman to the City Council and mayor. Mrs. Esparza has testified, and Defendant does not dispute, that she lodged a complaint against him at a City Counsel meeting on July 22, 2008, for failure to investigate a complaint that children were throwing firecrackers at her dogs. Likewise, Defendant does not dispute that Texico's mayor relayed information about this complaint to him prior to Mrs. Esparza's appearance at the July 22, 2008 City Council meeting.

After making a complaint at the July 22nd City Council meeting, Mrs. Esparza began to notice Texico City police cars drive by her home, and, on one occasion, saw Defendant pointing out her home to another, African American police officer who appeared to be from another jurisdiction. Just prior to the August 16, 2008 incident, Mrs. Esparza again complained to the mayor about what she felt was harassment by Defendant Bowman and his subordinate officers. Mrs. Esparza has stated that the mayor told her that he would speak to Bowman about these allegations. (Exhibit A, *Deposition of Maria Esparza*, p. 58, lines 14-18.)

Mrs. Esparza has stated that after the August 16th incident, she again spoke to someone in City Hall about making a complaint against Bowman. Given that Bowman learned from the mayor on two prior occasions of Mrs. Esparza's complaints, it is not irrational to draw the inference that the mayor again spoke to Bowman about Mrs. Esparza's complaint regarding the August 16th incident, thus formulating the impetus for Bowman to seek a warrant for Mrs. Esparza's arrest. Furthermore, regardless of whether Bowman knew of Mrs. Esparza's complaint regarding the August 16th incident, there is sufficient evidence to suggest that her complaints in July and early August 2008 were a large and motivating factor in Bowman's desire to seek her arrest. From the videotaped footage of the incident on August 16, 2008, Bowman speaks as if he is relishing the opportunity that he thought had presented itself to (wrongfully) arrest Mrs. Esparza. Had Bowman not been improperly motivated by his desire to retaliate against Mrs. Esparza, he perhaps would have come to the realization that he did not have probable cause for her arrest.

The facts, as alleged, support a reasonable inference that Bowman's act of arresting Mrs. Esparza on August 18, 2008, was retaliatory and in violation of Mrs. Esparza's First Amendment rights. Furthermore, such prohibitions against such retaliatory conduct were sufficiently established prior to these acts to deny Defendant's qualified immunity claim.

Additionally, Mrs. Esparza contests Defendant's contention any discussion of events prior to August 16, 2008 is time barred by the statute of limitations. Mrs. Esparza is not alleging that these events give rise to Mrs. Esparza's cause of action, but that they provide background for the causes of action relating to Mrs. Esparza's arrest on August 18, 2008.

For the reasons stated herein, Mrs. Esparza respectfully requests the Court enter an order denying Defendant Bowman's motion for summary judgment on all remaining claims.

Respectfully Submitted,

By: <u>Paige Duhamel, Esq.</u>
  Paige Duhamel, Esq.
  2501 Rio Grande Blvd. NW, Suite B
  Albuquerque, NM 87104
  (505) 244-0950

  MORRISSEY | LEWIS, LLC

By:<u> Jason J. Lewis, Esq.</u>
  Jason J. Lewis, Esq.
  2501 Rio Grande Blvd. NW, Suite B
  Albuquerque, NM 87104
  (505) 244-0950


I hereby certify that a true copy of the foregoing pleading was filed with the Court's CM/ECF filing system and served via CM/ECF on opposing counsel on June 13, 2012 as follows:

Lisa Entress Pullen
Lawrence H. Hill
*Attorneys for Defendant Douglas Bowman*
pullen@civerolo.com
hill@civerolo.com


<u>/s/ Paige Duhamel</u>
PAIGE DUHAMEL