IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIA ESPARZA,

          Plaintiff,

v.                                                        Case No. 11-CV-727 WJ/WPL

DOUGLAS BOWMAN, in his individual capacity,

          Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT BASED ON QUALIFIED IMMUNITY AND FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant Douglas Bowman's Motion to Dismiss Complaint Based on Qualified Immunity and for Summary Judgment **(doc. 30)**, filed May 30, 2012. Upon review of the parties' submissions and the applicable law, the Court finds that Defendant's motion is not well taken and shall be **DENIED**.

### BACKGROUND

In a Qualified Immunity analysis at the summary judgment stage, courts take the non-movant's version of the facts, unless that version is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Accordingly, the Court will view the facts in the light most favorable to Plaintiff, and accept Plaintiff's version of any disputed fact.

Plaintiff Maria Esparza is a resident of Texico, New Mexico. At the time of the events in question in 2008, Plaintiff was seventy-two-years old. Defendant Douglas Bowman is the Chief of Police in Texico, and has been so since April of 2008. As the police chief, Defendant performs both administrative and ordinary law-enforcement duties.

Plaintiff and Defendant first met in early summer of 2008, when Plaintiff called Texico City Hall for assistance when she saw children in golf carts throwing firecrackers at her dogs. Defendant responded to the complaint, but rather than investigating the allegations, he instead

chastened Plaintiff about her dogs being loose.  Plaintiff complained to City Hall about Defendant, but at a meeting on July 22, 2008, the Texico City Council took no action against Defendant.  Nevertheless, the mayor informed Defendant about the complaint.  After filing her complaint, Plaintiff saw Defendant drive by her home and point it out to another police officer.  Plaintiff again complained to the Texico City Mayor, but no action was taken.

On August 16, 2008, police dispatch received an anonymous call reporting that a possible fight involving six individuals was occurring at 323 State Street.  Defendant, who was on duty, was dispatched to investigate the report.  No identifying information was given regarding any individuals involved.  Defendant arrived at the address about a minute after receiving the call from dispatch, and saw approximately four men and Plaintiff at the location.  He recognized Plaintiff, and also recognized the men as members of Plaintiff's family.  There were no signs of a fight. Plaintiff had arrived at the address in order to pick up her husband.  She had been at the address for 15 or 20 minutes prior to Defendant's arrival, and had not seen or heard any fighting.  Her youngest daughter, who suffers from cerebral palsy, was in the back of the car.

When Defendant arrived at the address, Plaintiff was walking towards her car.  Defendant exited his vehicle and shouted to Plaintiff that he needed to talk with her, and that if she left, he would get a warrant for her arrest.  Plaintiff continued to walk to her car, and got into it.  She testifies that she did not understand that Defendant wanted to talk to her until she had already gotten into her car. Defendant approached Plaintiff's vehicle, and tapped on the window, repeating that he needed to talk with her, and threatening her with arrest.  He opened the driver's-side door and repeated that he needed to talk to her, although he did not explain to her why he needed to talk to her, or specifically that she was not free to leave without speaking with him.  Plaintiff pulled the door shut.  She speaks English, and could understand what

2

Defendant was saying, but was confused by the situation, did not understand what Defendant wanted, and was afraid of Defendant. Also, Plaintiff's daughter, still sitting in the back seat of the car, was frightened by Defendant's actions.

After a few moments, without having agreed to speak with Defendant, Plaintiff drove off. Defendant spoke with others present at the scene, but made no arrests because he could find no evidence that any fight had occurred. Plaintiff went to her home a short distance away at 414 State Street. She called dispatch, told them that she had spoken with a police officer, that she didn't understand what he wanted, and asked whether he could arrest her. Shortly thereafter, another police officer, Officer Salguero, arrived at Plaintiff's home. Plaintiff told the officer that Defendant had been yelling at her, and that she had called the police because she did not understand what was happening.

Defendant prepared an affidavit for an arrest warrant on August 19, 2008, which was approved by a district attorney. The application sought a warrant for Plaintiff's arrest for violation of N.M. Stat. Ann. 1978 § 30-22-1. In the affidavit, Defendant states that Plaintiff could have been a witness to the possible fighting incident reported in the anonymous 911 call. The warrant application was approved and a warrant issued by a magistrate judge. Plaintiff was arrested by officer Salguero and another officer on August 18, 2008. At some time after her initial arrest and during the pendency of the criminal charges against her, Plaintiff called the mayor's office to complain again about Defendant and possibly to be placed on the agenda for the August city council meeting, but she did not follow through because of the pending criminal charges against her.

Plaintiff was found guilty by a jury in Magistrate Court of violating N.M. Stat. Ann. 1978 § 30-22-1. Plaintiff appealed her conviction to the District Court, where her attorney entered a

guilty plea on her behalf. Plaintiff obtained new defense counsel and challenged the entry of the guilty plea. The court of Appeals set aside the plea on procedural grounds, whereupon the district attorney agreed to a dismissal of the criminal charges.

The two magistrate judges who oversee warrant applications for the Texico City Police Department are non-attorney magistrate judges, and Defendant admits that he has never known a magistrate judge to reject a warrant application submitted by himself or his fellow officers. Also, Defendant admits that only once during his law enforcement career has a district attorney required him to adjust a warrant application before approving it; all other times the warrant applications have been approved as he submitted them.

Plaintiff filed the current suit on August 16, 2011, alleging violations of her constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff's claims are as follows:

> Count I: unlawful detention and false arrest in violation of the Fourth and Fourteenth Amendments;
>
> Count II: malicious prosecution in violation of the Fourth and Fourteenth Amendments;
>
> Count III: violation of Plaintiff's First Amendment right to free speech.

Plaintiff has agreed to dismiss her claim for malicious prosecution, and therefore the Court will only address the merits of her unlawful detention and First Amendment claims.

## LEGAL STANDARD

The Qualified Immunity analysis serves the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). "In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010)

(internal quotation marks and citations omitted). "Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Id.* "In assessing whether the right was clearly established, we ask whether the right was sufficiently clear that a reasonable government officer in the defendant's shoes would understand that what he or she did violated that right." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).

## DISCUSSION

**I.   Unlawful Detention Claim**

Plaintiff alleges that she was unlawfully arrested and detained in violation of her Fourth and Fourteenth Amendment rights. Under the qualified immunity analysis, Plaintiff bears the burden of establishing both that her rights were violated, and that the law was clearly established at the time of the violation.

    *A.*   Violation of Rights

        1.   Causal Connection

Defendant did not personally arrest Plaintiff; therefore the first thing Plaintiff must establish in her burden to prove that Defendant violated her rights is that there was a sufficient causal connection between Defendant's actions and her arrest to support liability under § 1983. "The requisite causal connection is satisfied if the defendant set in motion a series of events that

the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Poolaw v. Marcantel*, 565 F.3d 721, 732–33 (10th Cir. 2009) (quoting *Snell v. Tunnell*, 920 F.2d 673, 700–01 (10th Cir. 1990)).  Therefore Plaintiff must show that Defendant knew or should have known that his actions of submitting an affidavit and warrant application would result in Plaintiff's eventual arrest.

Defendant testified that neither he nor to his knowledge any of his subordinate officers, during the course of his ten years in law enforcement, has ever had a warrant application rejected by the magistrate judges serving Curry County.  Defendant also testified that, upon review of the warrant applications, a deputy district attorney has only once in his memory ever required modification of a warrant application before its submission to a magistrate judge for approval.  Given these facts, the Court concludes that Defendant knew or reasonably should have known that his affidavit and warrant application would have resulted in an issuance of a warrant for Plaintiff's arrest, and her consequent arrest.  Accordingly, Plaintiff has established the necessary causal link between Defendant's actions and her arrest to support § 1983 liability.

    2.  Probable Cause

Because Plaintiff was arrested as a result of Defendant's actions, in order to establish that her rights were violated Plaintiff must establish that Defendant did not have sufficient probable cause to justify her arrest.

Plaintiff was arrested for violating N.M. Stat. Ann. § 30-22-1, which makes illegal "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him."  Section 30-22-1 applies where law enforcement officers have reasonable suspicion to stop a person and the person flees or evades the officer with

knowledge that the officer was attempting to apprehend them. *Romero v. Story*, 672 F.3d 880, 886 (10th Cir. 2012) (citing *New Mexico v. Gutierrez*, 162 P.3d 156, 167 (N.M. 2007)). Thus, the law requires that in order to have had probable cause to arrest Plaintiff under section 30-22-1, (1) Defendant must have had reasonable suspicion that Plaintiff had committed a crime, justifying an investigatory stop; (2) Defendant must have had a reasonable belief that Plaintiff knew that Defendant was trying to apprehend her; and (3) Plaintiff must have fled. As to the last requirement, the parties do not dispute that Plaintiff did in fact drive away from Defendant. However, the first two requirements require more discussion.

      a.  Knowledge of Attempt to Apprehend

In order to have probable cause to arrest Plaintiff under section 30-22-1, Defendant must have had a reasonable belief that Plaintiff knew that Defendant was trying to apprehend her. Plaintiff testified that Defendant yelled at her, and told her (1) that he needed to speak with her, (2) that she needed to respect him, and (3) that he would obtain a warrant for her arrest if she left. She also stated that she could both hear and understand what he was saying. "[W]hether there was a 'show of authority' sufficient for a seizure . . . is an objective test and depends on whether the officer's words or actions would have conveyed to a reasonable person that he was being ordered to 'restrict his movement.'" *State v. Gutierrez*, 162 P.3d 156, 167–68 (N.M. 2007) (citing *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). Although Defendant could have been more clear about why he wished to speak to Plaintiff, and although Plaintiff may have been subjectively confused about whether she was required to stay and speak with Defendant, the Court concludes that Defendant's words and actions were sufficient to convey to a reasonable person that she was being ordered to restrict her movement.

      b.  Reasonable Suspicion

The final element of section 30-22-1 is that Defendant must have had reasonable suspicion to initiate an investigatory stop.  An officer may initiate a short investigatory stop of a person if that officer has reasonable suspicion that that person has broken the law, even if there is no probable cause to make an arrest.  *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *State v. Galvan*, 90 N.M. 129, 131 (Ct. App. 1977).  On the other hand, if a police officer approaches a person without justification, "the person approached . . . need not answer any questions put to him; indeed, he may decline to listen to the questions at all and may go on his way."  *Florida v. Royer*, 460 U.S. 491, 498 (1983) (citing *Terry*, 392 U.S. at 32–33 (Harlan, J., concurring); *id.* at 34 (WHITE, J., concurring)).  Indeed, "[h]e may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds."  *Florida*, 460 U.S. at 498 (citing *United States v. Mendenhall*, 446 U.S. 544, 556 (1980)).

Whether an officer has reasonable suspicion is decided based upon the totality of the circumstances, and officers are allowed to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  "The likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerable short of satisfying a preponderance of the evidence standard."  Id. at 274.  Nevertheless, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonable warrant" the stop.  *Romero v. Story*, 672 F.3d 880, 886 (10th Cir. 2012).  Reasonable suspicion demands "something more than an inchoate and unparticularized suspicion or hunch."  *Id.* (internal quotations omitted).  Nor is it enough that there simply be an allegation that criminal activity has taken place; instead,

there must be some reasonable belief that the particular individual detained committed an alleged crime. *United States v. Fisher*, 597 F.3d 1156, 1158–59 (10th Cir. 2010).

In this case, taking Plaintiff's version of the facts, Defendant knew that an anonymous call had reported a public disturbance with yelling and fighting at a particular location, and upon arriving at that location several men and Plaintiff were there. Plaintiff was yelling, and then walked towards her car. Plaintiff was walking to her car when Defendant began yelling to her, thus attempting to initiate an investigatory stop.

Defendant has not identified what crime he had reasonable suspicion that Plaintiff committed, beyond the general description "public disturbance." The Court must presume that Defendant means N.M. Stat. Ann. 1978 § 30-20-1(A), Disorderly Conduct, which prohibits "engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace." The petty misdemeanor "disorderly conduct" has two elements: (1) the conduct itself must be "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct"; and (2) the conduct must tend towards disturbing the peace. *State v. Correa*, 222 P.3d 1, 7 (N.M. 2009). The Supreme Court of New Mexico has "defined 'disturbing the peace' as a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *Id.* (internal quotation marks and citations omitted).

Defendant knew nothing to indicate that Plaintiff had engaged in violent, abusive, indecent, profane, or boisterous conduct. Plaintiff was yelling when Defendant arrived at the house, but there is nothing to indicate that a 72-year-old woman yelling at her male family members is "unreasonably" loud. A raised voice—without more—is not criminal conduct, and

9

Defendant has provided no legal basis for holding it to be criminal. Additionally, though the 911 call referenced the possibility of a fist-fight, nothing Defendant observed about Plaintiff suggested that she had just engaged in fisticuffs with her male family members. In fact, if—upon arriving at the reported scene of a fist-fight and observing several men standing around—Defendant zeroed in on a 72-year-old woman walking towards her car as a likely participant, the Court is hard pressed to consider such a conclusion objectively reasonable.

Moreover, nothing about the scene suggests that any conduct by Plaintiff tended toward a public disturbance. Defendant observed no act of violence, nor was Plaintiff's conduct likely to produce violence. As far as causing consternation and alarm, while being loudly scolded by one's elderly mother could certainly cause contrition and embarrassment, Defendant has established no undisputed facts that would support reasonable suspicion that her actions were so alarming as to disturb the peace. *See, e.g.*, *State v. Hawkins*, 991 P.2d 989, 992 (N.M. App. 1999) (gathering and comparing cases).

Accordingly, upon the evidence presented to the Court, and making all permissible factual inferences in favor of Plaintiff, Defendant did not have sufficient reasonable suspicion that Plaintiff had committed a crime to detain her for an investigatory stop.

    *B.*    Law Was Clearly Established

"In the context of an unlawful arrest our analysis is simple, for the law was and is unambiguous: a government official must have probable cause to arrest an individual." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1286 (10th Cir. 2008) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1158–59 (10th Cir. 2008)). For an arrest under N.M. Stat. Ann. § 30-22-1, the law was clearly established at the time of Defendant's actions that reasonable suspicion of an underlying crime was required. *See New Mexico v. Gutierrez*, 162 P.3d 156, 167 (N.M. 2007).

Accordingly, Plaintiff has satisfied the second prong of her two part burden under the qualified immunity analysis, and Defendant has not shown that he is entitled to qualified immunity, nor to summary judgment as to Plaintiff's claim for unlawful arrest and detention. Therefore, the Court DENIES Defendant's motion as to this claim.

**II.**   First Amendment Violation Claim

    *A.*   Violation of Plaintiff's First Amendment Rights

Plaintiff alleges a violation of her First Amendment rights. In order to show that her rights have been violated, Plaintiff must show

> (1) that she was engaged in a constitutionally protected activity; (2) that a defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to her exercise of her First Amendment speech rights.

*Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). In a case where, as here, a plaintiff's complained-of injury was arrest, the plaintiff must show that there was not probable cause for arrest. *See Becker*, 494 F.3d at 925.

Plaintiff lodged a complaint against Defendant at a city council meeting on July 22, 2008, and Defendant learned of that complaint before August 16, 2008.[1] Lodging official complaints about police action with a city council is speech protected by the First Amendment; in fact "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987). Arrest without probable cause would chill a person of ordinary firmness from engaging in the protected activity. *See Beck v. City of Upland*, 527 F.3d 853, 863–64 (9th Cir. 2008) ("[U]nder *Hartman*, if a

---

[1] Defendant argues that the statute of limitations bars any consideration of events before August 16, 2008, because Plaintiff filed her Complaint on August 16, 2011. Defendant's contention is unsupported by the law. The three-year statute of limitations acts to bar *causes of action* which arose before August 16, 2008, not to bar *evidence* relevant to claims which arose after August 16, 2008.

plaintiff can prove that the officials secured his arrest . . . without probable cause and were motivated by retaliation against the plaintiff's protected speech, the plaintiff's First Amendment suit can go forward.") (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)); *see also Lackey v. County of Bernalillo*, 166 F.3d 1221, *3 (10th Cir. 1999) (unpublished decision) ("Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."). In this case, the Court concludes that having Plaintiff's arrest arranged by the very officer about whom she had complained would reasonably chill any future complaints about him. Therefore the primary question is whether Plaintiff has sufficiently shown that Defendant's motivation to arrest her was as a result of her filing complaints about him to the city council.

Plaintiff had a confrontational interaction with Defendant sometime in early summer of 2008. On July 22, 2008, Plaintiff lodged a complaint with the City Council, and Defendant was informed of the complaint. On August 16, 2008, Plaintiff and Defendant had another confrontational interaction. On August 18, 2008, Defendant filed an application for Plaintiff's arrest without—according to Plaintiff's version of the facts—probable cause. The temporal proximity of these events suffices to support an inference that Defendant's motivation behind the arrest was retaliation for Plaintiff's having filed a complaint about him with the City Council. Additionally, the fact that the arrest was without probable cause is itself strong circumstantial evidence of Defendant's impermissible motive. *See Hartman v. Moore*, 547 U.S. 250, 251 (2006) ("[E]vidence showing whether there was probable cause for the criminal charge will be highly valuable circumstantial evidence to prove or disprove retaliatory causation. Demonstrating a lack of probable cause will tend to reinforce the retaliation evidence and show

that retaliation was the but-for basis for instigating the prosecution."). Accordingly, Plaintiff has met her burden under the qualified immunity analysis to show that her rights were violated.

  B. Law Clearly Established

"Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right, and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (internal citations and quotations omitted; alteration in original). Therefore the law was clearly established in August of 2008 that Defendant could not arrest Plaintiff without probable cause in retaliation for her lodging of complaints against him. Accordingly, because Plaintiff has carried her burden of showing—according to her version of the facts—that Defendant violated her First Amendment rights and that the law was clearly established, the Court DENIES Defendant's motion as to this claim.

## CONCLUSION

For the reasons stated above, Plaintiff has satisfied her burden to establish that her rights were violated and that the law was clearly established at the time of the violation. Additionally, Defendant has not shown the absence of disputed material facts, nor that he deserves judgment as a matter of law. Accordingly, the Court hereby DENIES Defendant's Motion to Dismiss Complaint Based on Qualified Immunity and for Summary Judgment.

**SO ORDERED.**

                    _____
                    UNITED STATES DISTRICT JUDGE